# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

        -vs-                       REPORT & RECOMMENDATION

BASILIO HERNANDEZ,                18-CR-6126-FPG-MJP

              Defendant.

## APPEARANCES

For the United States:              Cassie M. Kocher, A.U.S.A.
                                United States Attorney's Office
                                100 State Street, Fifth Floor
                                Rochester, NY 14614

For the Defendant:                 James L. Riotto, II, Esq.
                                30 West Broad Street Suite 306
                                Rochester, NY 14614

## INTRODUCTION

**Pedersen, M.J.** This case is before the Court on the discrete issue of defendant Basilio Hernandez's ("Defendant") motion "to suppress the fruits of the search conducted at 35 Geneva Street . . . on September 21, 2017 for the reason that the officers made a warrantless entry into the home/curtilage without a warrant and the warrant that was later obtained was obtained through the use of the illegally seized evidence." (Kennedy Aff. at 27, ECF[1] No. 31.)[2] For the reasons stated below, the undersigned recommends that the district judge find that the search warrant issued

---

[1] "ECF" stands for Electronic Case Files, which is the Court's filing system. The system assigns a document number to most filings. The Court will use the ECF number to refer to the filed documents in the decision.

[2] On November 7, 2019, the Honorable Frank P. Geraci referred this matter to the undersigned for those matters which the undersigned may hear and thereafter file a report and recommendation for disposition pursuant to Section 636(b)(1)(B). (Text Order, ECF No. 56.)

in connection with the search of Defendant's white BMW lacked probable cause. However, the Court further recommends that the district court find that the good faith exception to the exclusionary rule applies such that Defendant's motion to suppress should be denied.

## PROCEDURAL BACKGROUND

On August 21, 2018, the Grand Jury indicted Defendant on four counts: (1) narcotics conspiracy in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 841(b)(1)(C), all in violation of 21 U.S.C. 18 U.S.C. § 846; (2) possession of fentanyl and heroin with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 841(b)(1)(B), and 18 U.S.C § 2; (3) possession of heroin with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 18 U.S.C. § 2; and (4) possession of cocaine with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C), and 18 U.S.C. § 2. (Indictment, ECF No. 22.)

On October 29, 2018, Defendant filed an omnibus motion, including a motion for suppression of evidence related to the September 21, 2017, search conducted at 35 Geneva Street. (Def.'s omnibus mot. at 26, ECF No. 31.) The government filed its response on November 16, 2018. (Gov't's resp. to omnibus mot., ECF No. 32.) On June 3, 2019, the Honorable Jonathan W. Feldman issued a Report and Recommendation ("R&R") in which he indicated that he had previously addressed several of Defendant's pretrial motions (Order, ECF Nos. 35, 36, & 38), and that he had held an evidentiary hearing on January 23, 2019, regarding Defendant's motions to suppress

(Tr.[3], Jan. 23, 2019, Hr'g, ECF Nos. 37 & 39). (Judge Feldman R&R at 1, ECF No. 48.)

In his R&R, Judge Feldman recommended that Defendant's motion to suppress statements be denied. (*Id.* at 20.) Moreover, Judge Feldman found that the driveway in which the subject BMW was parked was part of the curtilage of 35 Geneva Street, which meant that the actions by law enforcement—lifting the tarp on a BMW that was parked on the curtilage of 35 Geneva Street to obtain its vehicle identification number ("VIN") and utilizing a drug detection dog—were unlawful searches and should be excised from the warrant. (*Id.* at 4–5, 13.) However, Judge Feldman also indicated that the government appeared to argue an "alternative theory" that the warrant was supported by probable cause—namely that even without the canine sniff "there is probable cause to support the warrant because the warrant is also based on information provided by a confidential source." (*Id.* at 13, emphasis in original.) Judge Feldman concluded that the factual and legal support for this theory could not be divined from the government's brief. (*Id.* at 16.) For this reason, Judge Feldman provided the government with the opportunity to submit a post-hearing brief on its theory, and gave Defendant the opportunity to respond. (*Id.* at 16–17.)

On June 17, 2019, the government filed its brief in support of its alternative theory argument in response to Judge Feldman's R&R. (Gov't resp. to R&R, ECF No. 50.) Defendant filed his reply on July 22, 2019. (Def.'s reply to R&R, ECF No. 52.) At oral argument regarding the government's alternative theory, Judge Feldman

---

[3] "Tr." refers to the official transcript of oral proceedings.

concluded that a further hearing was necessary to allow Investigator Joseph Briganti

("Briganti") to explain what information the confidential informant ("CI") provided to

him. (Tr. Aug. 12, 2019 oral arg. at 24:6–25:22, 19:17–20:11, ECF No. 55.)

The undersigned conducted an evidentiary hearing on November 22, 2019,

during which the parties and the Court questioned Briganti. (Tr. Nov. 22, 2019 Hr'g

at 1, ECF No. 62.) At the conclusion of the hearing, the undersigned requested that

the parties provide additional briefing with respect to the substance of Briganti's

testimony. (*Id.* at 49:6–9.) Defendant submitted his post-hearing brief on July 29,

2020. (Def.'s post-Hr'g mem. of law, ECF No. 82.)[4] On October 30, 2020, the

government submitted its post-hearing memorandum of law. (Gov't post-Hr'g mem.

of law, ECF No 91.) The recommendation below is based upon a review of the

foregoing documents and testimony.

## Rᴇʟᴇᴠᴀɴᴛ Fᴀᴄᴛᴜᴀʟ Bᴀᴄᴋɢʀᴏᴜɴᴅ

The search warrant affidavit prepared by Briganti indicated that there was

probable cause to believe that certain property would be found in a vehicle described

by Briganti and further provided:

> On September 21, 2017 your deponent and Investigator Swain had a
> conversation with a confidential informant. The confidential informant's
> name has been withheld from this affidavit for reasons of safety. The CI
> is personally known to your deponent and is involved in narcotic
> investigations of which information provided by the CI has been
> corroborated by your deponent and has resulted in arrests of suspects

---

[4] Defendant initially filed his post-hearing brief on July 29, 2020. (ECF No. 82.) Thereafter,
Defendant filed a motion to seal Exhibit 4 to its memorandum of law, which was granted. (ECF No. 83
& ECF No. 85.) Defendant then re-filed his memorandum of law without Exhibit 4 on July 30, 2020.
(ECF No. 84.) References in this R&R are to the latter filed brief (ECF No. 84), which appears to be
identical to ECF No. 82, except that the fourth exhibit containing grand jury minutes is not included
as it was filed under seal.

on drugs and weapons charges. The CI has been an active confidential
informant since 2014.

The CI stated to your Deponent and Investigator Swain that during the
late night to early morning hours of September 20, 2017 and September
21, 2017, he/she observed several Hispanic males packaging a large
quantity of Heroin inside a location on Geneva Street. The CI has proven
to your deponent that he/she is familiar with the characteristic of
Heroin. This is based on information provided by the CI that has lead
[*sic*] to several Heroin seizures. The CI stated that during the early
morning hours of September 21, 2017 he/she observed an Hispanic
female take the packages of Heroin and place them in the trunk of the
1992 BMW white in color, bearing no New York Registration, with
Vehicle Identification Number of WBAHD6313NBJ68299. The vehicle
is not currently registered and is parked in the driveway of 35 Geneva
Street. The CI stated that he/she contacted Investigator Swain and your
deponent once the Hispanic males and female left the location.

On September 21, 2017 Investigator Swain responded to the area of 35
Geneva Street and observed a White BMW parked in the driveway of 35
Geneva Street. The vehicle matched the description given by the CI.

(Briganti Aff. at 4–5, ECF No. 31-1.)

Monroe County Court Judge Vincent Dinolfo signed a warrant for the search
and seizure of the BMW based upon the information provided by the CI, as well as
the K-9's alert to the bumper of the BMW. (*Id*. at 1–2.) However, as noted above,
Judge Feldman concluded that the VIN number was illegally obtained from the
vehicle because Rochester Police Department Officer Nick Thomas ("Thomas")
obtained it through a warrantless search of the BMW in the curtilage of 35 Geneva
Street. (Judge Feldman R&R at 2–3, 13.) Judge Feldman also concluded that the dog
sniff conducted at 35 Geneva Street was a warrantless search. (*Id*. at 13.) He then
directed the government to file a post-hearing brief regarding its alterative theory
and for Defendant to respond. (*Id*. at 16.)

In its additional briefing, the government asserted that even after excising the VIN number and dog sniff from Briganti's affidavit, the search warrant was still supported by probable cause because "law enforcement received information from a witness that he/she had observed individuals packaging narcotics and placing them in a particularly described vehicle . . . [and] [o]fficers then corroborated that information by observing a vehicle matching the description in the driveway of 35 Geneva Street." (Gov't resp. to R&R at 2, 16, ECF No. 50.) At the fact-finding hearing on August 12, 2019, Judge Feldman tried to determine what information was provided by the CI and what law enforcement corroborated. (Tr. Sept. 18, 2019 Hr'g at 3:17–6:7, ECF No. 55.) During the hearing, the government indicated that it believed the year of the vehicle and the VIN number were obtained by lifting a tarp on the BMW. (*Id*. at 7:10–8:14.) The defense pointed out that there was no mention of a tarp in the search warrant affidavit and that, therefore, there is no indication that the CI ever said the vehicle was tarped. (*Id*. at 15:5–7.) After hearing further arguments from both sides, Judge Feldman concluded that Briganti's testimony was necessary to determine what information the CI had actually provided to Briganti. (*Id*. at 24:6–24.)

On November 22, 2020, the undersigned held an evidentiary hearing during which the parties and the Court had the opportunity to seek information from Briganti regarding the search warrant at issue. (Tr. Nov. 22, 2020 Hr'g, ECF No. 62.) At the hearing, Briganti testified that the CI did not tell him the VIN or the year of

the BMW. (*Id.* at 16:6–9, 34:14–17.) Briganti asserted that he discovered this information himself and confirmed it with Thomas. (*Id.* at 16:9–11.)

Briganti further testified that the CI called him on the morning of September 21, 2017, and told him that he walked to a white BMW three houses down from 41 Geneva Street with a female carrying packaged heroin and cocaine, who then placed the packaged heroin and cocaine in the trunk of the BMW. (*Id.* at 6:16–20.) Briganti also testified that the CI told him the white BMW was the third car in the driveway and that it had a car cover on it that was up in the back revealing that the car lacked license plates. (*Id.* at 6:19–25.) Briganti testified that after speaking with the CI, he contacted Investigator David Swain ("Swain"), his partner at the time, and asked him to "go to the area of 41 Geneva Street and see if he could see [the white BMW]." (*Id.* at 7:14–19.) Briganti further testified that Swain called him and said "he drove by the location of 35 Geneva Street and there was a car all the way to the back that had a car cover on it that was halfway up in the back . . . [w]hich matched the description of what the CI had stated to [Briganti] earlier." (*Id.* at 8:2–10.)

Briganti testified that Thomas, who was called to help secure the scene after Swain conducted his visit, told Briganti the full name of the resident at 35 Geneva Street—Basilio Hernandez—and also provided him with the VIN number of the white BMW. (*Id.* at 10:13–20, 11:11–16.) Briganti testified that he also learned the VIN number himself because the CI told him that the first name of the individual living at the home where the car was parked was "Basilio." (*Id.* at 11:23–12:1.) Briganti then "checked with Rochester city records and Basilio Hernandez was what they came

back with. [He] then went to eJustice⁵ and determined that there was a titled vehicle to Mr. Hernandez that was titled but unregistered as a 1992 BMW." (*Id.* at 12:1–5.) Briganti also indicated that he learned the VIN number of the car this way as well. (*Id.* 12:6–8) However, although Briganti testified that he found cars titled to Defendant prior to seeking the warrant, he also testified that he could not recall whether he "obtained the VIN from Officer Thomas and [Briganti] confirmed it or if [Briganti] got it and [Thomas] confirmed it for [him]." (*Id.* at 48:8–22.)

Briganti testified that he sought the search warrant after he had spoken with the CI, Thomas, and Swain, after the K-9 alerted to the white BMW, and after he had run Defendant's name and learned that the white BMW was titled to him. (*Id.* at 12:9–22.) He asserted that the CI told him the vehicle "didn't have a rear license plate." (*Id.* at 16:16–25.) During the November 22, 2019, hearing, Briganti testified that the CI did not tell him that there was no New York registration sticker on the car. (*Id.* at 34:3–9.) Briganti stated that he learned the vehicle was "not currently registered," as provided in the warrant, through his own research. (*Id.* at 17:1–5.) Briganti also testified that the CI told him that the white BMW was parked at the rear of the driveway, and that this was later confirmed by Swain and Thomas. (*Id.* at 17:1–8.)

---

⁵ As referred to in Defendant's papers, "eJustice, also known as eJusticeNY, is a browser-based application designed to give users from qualified agencies a single point of access to computerized information within and beyond New York State. The system's security allows qualified users to obtain current status information for a defendant at any key decision point in the processing of a criminal case. eJustice is accessed from an office personal computer, and requires a personalized username and password." (Def's post-Hr'g mem. of law at 6, ECF No. 84.)

ANALYSIS

The Honorable Frank P. Geraci of this Court referred this case to the undersigned pursuant to 28 U.S.C. §§ 636(b)(1)(B). Subdivision (b)(1)(B) authorizes the undersigned to conduct a hearing on any motion excepted under subdivision (b)(1)(A), which includes a motion to suppress evidence in a criminal case, and submit a report and recommendation to the district judge. Accordingly, the undersigned submits this Report and Recommendation to Chief Judge Geraci.

### *The search warrant was not supported by probable cause.*

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "To establish probable cause to search a [place], two factual showings are necessary—first, that a crime was committed, and second, that there is probable cause to believe that evidence of such crime is located at the [place]." *United States v. Travisano*, 724 F.2d 341, 345 (2d Cir. 1983). Here, the dispute centers not on whether a crime was committed, but whether probable cause existed to believe that evidence of the crime would be located in Defendant's white BMW.

"[P]robable cause to search a place exists if the issuing judge finds a 'fair probability that contraband or evidence of a crime will be found in a particular place' and a federal court must apply a 'totality-of-the-circumstances analysis' in pursuing this inquiry." *United States v. Ponce*, 947 F.2d 646, 650 (2d Cir. 1991) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). When reviewing the validity of a search warrant:

> the duty of [the] court . . . is simply to ensure that the magistrate had a substantial basis for . . . conclud[ing] that probable cause existed. A search warrant issued by a neutral and detached magistrate is entitled

> to substantial deference, and doubts should be resolved in favor of
> upholding the warrant.

*United States v. Rosa*, 11 F.3d 315, 326 (2d Cir. 1993) (internal quotations and citations omitted); *Walczyk v. Rio*, 496 F.3d 139, 157 (2d Cir. 2007) ("[A] reviewing court must accord considerable deference to the probable cause determination of the issuing magistrate. . . ."). "[A]fter-the-fact scrutiny by courts of the sufficiency of an affidavit [applying for a warrant] should not take the form of *de novo* review." *United States v. Smith*, 9 F.3d 1007, 1012 (2d Cir. 1993) (quoting *Gates*, 462 U.S. at 236) (alteration in original). "[R]esolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." *Id.* (quoting *United States v. Ventresca*, 380 U.S. 102, 109 (1965)); *see United States v. Clark*, 638 F.3d 89, 93 (2d Cir. 2011) ("Such deference derives not only from the law's recognition that probable cause is 'a fluid concept' that can vary with the facts of each case, but also from its 'strong preference' for searches conducted pursuant to a warrant, and its related concern that '[a] grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting." (alteration in original) (citations omitted)). Here, due to the apparent negligence of the investigator who provided the affidavit in support of the search warrant, including the lack of clarity regarding the source of certain information contained in the affidavit, this Court recommends to the district judge that the search warrant was not supported by probable cause.

At the outset, Judge Feldman already determined that the VIN number and the dog sniff must be excised from the warrant application (Judge Feldman R&R,

ECF No. 48.). This Court must determine, therefore, whether probable cause exists from what remains after removing that information.

Defendant contends that after excising the illegally obtained information, the search warrant was not supported by probable cause. (Def.'s post-Hr'g mem. of law at 1, ECF No. 84.) Defendant argues that (1) the government relies on information obtained from an illegal search to corroborate the CI's statements, (2) Briganti's affidavit intertwines information provided by the CI with that garnered from the illegal search, and (3) the government failed to sufficiently address the reliability of the CI, asserting that the statements included in Briganti's affidavit are conclusory. (Def.'s reply to R&R at 2, 5, & 8, ECF No. 52; Def.'s post-Hr'g mem. of law at 11–12, ECF No. 84.)

In contrast, the government asserts that the search warrant can be upheld even if it includes "an untrue statement or illegally obtained evidence." (Gov't post-Hr'g mem. of law at 5, ECF No. 91.) Specifically, the government argues that even if the VIN, dog sniff, and year of the white BMW were excised, the search warrant was still supported by probable cause based on the totality of the circumstances. (*Id.* at 7.) The government further asserts that corroborated witness information can support a finding of probable cause. (*Id.* at 6.)

Numerous issues exist regarding statements included in Briganti's affidavit leading the undersigned to believe that due to Briganti's negligence in crafting the affidavit, the warrant was not supported by probable cause. One of the largest impediments to a finding of probable cause is that there are inconsistencies between

the search warrant application and Briganti's testimony. A simple reading of Briganti's affidavit would lead one to believe that, prior to the issuance of the search warrant and the illegal searches on the curtilage of 35 Geneva Street, the CI told Briganti that there was a "1992 BMW, white in color, bearing no New York Registration, with Vehicle Identification Number of WBAHD6313NBJ68299 [and that] [t]he vehicle is not currently registered and is parked in the driveway of 35 Geneva Street." (Briganti Aff. at 5, ECF No. 32-1.) However, this statement is inaccurate in several respects.

During the November 22, 2019, hearing, Briganti testified that the CI did not provide him with the VIN number, year of the car, or tell him the car did not have a New York registration, despite the fact that the search warrant application reads as though the CI provided that information. In addition, the search warrant affidavit also leads one to believe that the CI told Briganti that the white BMW was parked in the driveway of 35 Geneva Street. However, at the November 22, 2019, hearing, Briganti testified that the CI did not provide him with the address of the home at which the white BMW was parked. (Tr. Nov. 22, 2019 Hr'g at 7:1–6.) Instead, the CI told Briganti that the white BMW was parked "three houses down" from 41 Geneva Street. (*Id.* at 6:14–19; 7:7–9.) Briganti later changed his testimony during the hearing, stating that he learned the vehicle was parked at 35 Geneva Street from the CI. Thus, the undersigned is not able to determine whether the CI told Briganti the vehicle was parked "three houses down" from 41 Geneva Street or told Briganti that it was parked in the driveway of 35 Geneva Street. As noted at the hearing, the

houses on that portion of Geneva street are two family homes, each with an address. So, three houses down could mean either three two-family buildings down, or three addresses down.

Further, the search warrant affidavit does not mention that the white BMW was covered by a tarp, although Briganti testified that the CI imparted this information to him. (Briganti Aff., ECF No. 32-1; Tr. Nov. 22, 2019 Hr'g at 6:14–25, 38:23–39:1.) The search warrant affidavit does not say that the white BMW lacked license plates, though Briganti testified that the CI also provided him with this information. (Briganti Aff., ECF No. 32-1)[6] The search warrant also fails to address that the white BMW was the third car parked in the driveway, a fact Briganti testified that he learned from the CI. (Tr. Nov. 22, 2019 Hr'g at 6:10–13.) Based upon the forgoing, there is a lack of clarity regarding what facts Briganti attributes to the CI and what information he learned from other sources, such as from the warrantless searches. Briganti's inconclusive statements coupled with other inaccuracies contained in his affidavit fall short of establishing probable cause. *See United States v. Falso*, 544 F.3d 110, 121 (2d Cir. 2008) (holding that probable cause was lacking, in part, due to inconclusive statements contained in an affidavit submitted in support of a search warrant.) Though the Court could excise information from the affidavit, it

---

[6] Briganti's affidavit does indicate that the white BMW was "not currently registered," but the Court does not construe this to mean that it did not have license plates. (*Id.* at 5.) Briganti testified that the CI told him that the vehicle "didn't have a rear license plate," but this was not included in the search warrant affidavit, and, therefore, not before the issuing judge. (Tr. Nov. 22, 2019 Hr'g at 16:12–25.)

is unclear what information would need to be excised before evaluating whether the remaining information provided probable cause to the issuing judge.

In addition, in his affidavit Briganti indicated that "[o]n September 21, 2017 [Briganti] and Investigator Swain had a conversation with a confidential informant" and that "the CI stated that he/she contacted Investigator Swain and your deponent once the Hispanic males and female left the location." (Briganti Aff. at 5.) However, Briganti testified that the CI only spoke with him and not Swain. (Tr. Nov. 22, 2019 Hr'g at 14:11–24, 17:18–25, 28:4–25, & 36:18–21.)

Further, it appears that the only corroboration of the CI's information is Briganti's relaying of what Swain saw when he went to 35 Geneva Street. Given Briganti's apparent negligence in preparing the search warrant application the Court cannot be certain that Briganti's relaying of what Swain told him is completely accurate. Swain has not testified.

The undersigned believes that Briganti's testimony resulted in more questions than answers, further muddling what information the CI provided and what came from other means, to the extent that the undersigned is uncertain about what should have remained in the warrant submitted to Judge Dinolfo. For this reason, and in viewing the totality of the circumstances as this Court must, the undersigned cannot conclude that the search warrant was supported by probable cause. Based upon the forgoing, the undersigned recommends to the district judge that he find that the search warrant was not supported by probable cause.

***The good faith exception applies.***

      Even if the warrant lacked probable cause and Defendant's Fourth Amendment rights were violated when the outside of his vehicle was searched, the exclusionary rule does not automatically operate to suppress the seized evidence. "Indeed, exclusion has always been our last resort, not our first impulse." *Herring v. United States*, 555 U.S. 135, 140 (2009) (internal quotations and citation omitted). The exclusion of evidence obtained in violation of the Fourth Amendment is a "prudential" remedy, crafted by the Supreme Court to "compel respect for the constitutional guaranty." *Davis v. United States,* 564 U.S. 229, 236 (2011) (internal quotation marks omitted). Neither a "personal constitutional right" nor a means to "redress the injury" of an unconstitutional search, the exclusionary rule is designed to deter future Fourth Amendment violations. *Id.* 236–237 (internal quotation marks omitted). Because the remedy exacts a heavy toll on the justice system, however, the exclusionary rule does not apply whenever suppressing evidence "might provide marginal deterrence." *Herring,* 555 U.S. at 141 (internal quotation marks omitted). The rule's corrective value justifies its cost "when the police exhibit deliberate, reckless, or grossly negligent disregard for Fourth Amendment rights." *United States v. Stokes,* 733 F.3d 438, 443 (2d Cir. 2013) (internal quotation marks and citation omitted). But when police act with "an objectively reasonable good-faith belief that their conduct is lawful," or when their conduct involves only "simple, isolated negligence," exclusion simply "cannot pay its way." *Davis,* 564 U.S. at 238 (internal quotation marks omitted).

In light of this principle, courts have recognized that evidence obtained by officers "in objectively reasonable reliance" on a warrant subsequently invalidated by a reviewing court is not generally subject to exclusion. *Falso,* 544 F.3d at 125 (internal quotation marks omitted) (citing *U.S. v. Leon*, 469 U.S. 897, 922 (1989)). When an officer genuinely believes that he has obtained a valid warrant from a magistrate and executes that warrant in good faith, there is no conscious violation of the Fourth Amendment, "and thus nothing to deter." *Leon,* 468 U.S. at 920–21. However, the good faith exception cannot shield even an officer who relies on a duly issued warrant in at least four circumstances: "(1) where the issuing magistrate has been knowingly misled; (2) where the issuing magistrate wholly abandoned his or her judicial role; (3) where the application is so lacking in indicia of probable cause as to render reliance upon it unreasonable; and (4) where the warrant is so facially deficient that reliance upon it is unreasonable." *Clark,* 638 F.3d at 100 (internal quotations and citations omitted). The Supreme Court clarified that these limitations apply not merely in cases of deliberate police misconduct, but also in situations where an officer is "reckless" or "grossly negligent" in seeking or executing a warrant. *Herring,* 555 U.S. at 144; *see also Davis,* 564 U.S. at 238.

"The burden is on the government to demonstrate the objective reasonableness of the officers' good faith reliance on an invalidated warrant." *Clark*, 638 F.3d at 100 (internal quotations and citations omitted). Moreover, as counseled by the Second Circuit, in assessing whether the government has met its burden, a court must consider that "in *Leon*, the Supreme Court strongly signaled that most searches

conducted pursuant to a warrant would likely fall within [the good faith exception's] protection." *Id.*

Here, it appears that Defendant believes the first *Leon* exception to the good faith rule applies—namely, that the issuing magistrate was knowingly misled—as he asserts that Briganti "engaged in deliberate falsehood and reckless disregard for the truth in applying for the instant search warrant." (Def.'s post-Hr'g mem. of law at 1, ECF No. 84.) Defendant faces a two-pronged test to be successful on this argument, as articulated in *Franks*. First, Defendant must make a "'substantial preliminary showing' that a deliberate falsehood or statement made with reckless disregard for the truth was included in the warrant affidavit and [second, that] the statement was necessary to the judge's finding of probable cause." *Falso*, 544 F.3d at 125 (quoting *Franks*, 438 U.S. at 155-56). After *Franks,* the Second Circuit found material omissions resulting from the affiant's deliberate falsehood or reckless disregard for the truth can suffice to suppress evidence obtained pursuant to an affidavit containing erroneous information. *United States v. Rajaratnam*, 719 F.3d 139, 146 (2d Cir. 2013). However, "[a]llegations of negligence or innocent mistake are insufficient." *United States v. Lucas*, 379 F. Supp. 3d 182 (W.D.N.Y. 2019) (quoting *Franks*, 438 U.S. at 171). For the reasons discussed below, the undersigned finds that while Briganti may have been negligent in the wording of his affidavit, it does not appear that he engaged in any deliberate falsehood or recklessly disregarded the truth to obtain the search warrant.

Defendant asserts that Briganti misled the issuing magistrate (Judge Dinolfo) by knowingly misrepresenting the facts, thus denying Judge Dinolfo "a complete and accurate account of events" and "intentionally or carelessly includ[ing] facts not attributable to the CI" when applying for the warrant in question. (Def.'s post-Hr'g mem. of law at 1, 10, ECF No. 84.) In particular, and as addressed above, Defendant contends that (1) Briganti was dishonest about accessing eJustice on September 21, 2017, to corroborate information provided by the CI, including the make, color, and registration of the target vehicle; (2) based upon a report prepared by Thomas, dated September 25, 2017, Thomas observed the BMW without any license plates and obtained the VIN, which he then ran and provided to Swain prior to the warrant being presented to the issuing judge, and Briganti included that information in the warrant application without corroborating it; (3) there are inconsistencies regarding when Briganti confirmed the white BMW's VIN number and when he identified Defendant as the owner of that vehicle; (4) Briganti's testimony before the federal grand jury regarding the information provided to him by the CI did not include the color of the BMW and that it was lacking license plates; and (5) Briganti's testimony regarding the information provided by the CI was "strikingly different in both content and specificity" from what is attributed to the CI in Briganti's affidavit such that Briganti "intentionally or carelessly include[d] facts not attributable to the CI." (*Id.* at 4–10, ECF No. 84.)

With respect to the first and third issues above, Defendant contends that, while the government asserts that Briganti independently corroborated information from

the CI regarding the make, color, and registration and Briganti testified that he "went to eJustice and determined that there was a titled vehicle to Mr. Hernandez that was titled but unregistered as a 1992 BMW" (Tr. Nov. 22, 2019 Hr'g, 12:3–5), no records support Briganti's assertion. (Def.'s post-Hr'g mem. of law at 7, ECF No. 84.) Defendant subpoenaed the New York State Division of Criminal Justice Services ("DCJS"), which maintains and monitors eJustice, for "EJUSTICE REQUESTS, REGARDING BASILIO HERNANDEZ DOB 6/11/74 BY INV. JOSEPH BRIGNATI [*sic*] OF THE ROCHESTER POLICE DEPARTMENT CONDUCTED ON 9/21/17." (Pl.'s post-Hr'g mem. of law, Ex. 1, ECF No. 84-1.) In response, DCJS responded that it searched for records related to Briganti's "userID" and the name, last name, and NYSID for Defendant, with no results. (*Id.*, ECF No. 84-2.) However, the government thereafter confirmed that Thomas and ATF Special Agent Timothy Fudella both ran the vehicle VIN number through eJustice and that Briganti was likely working closely with them to prepare the warrant and could not specifically recall—two years later—who ran the VIN number.[7] (Gov'ts post-Hr'g mem. of law at 17–18, ECF No. 91 & Ex. A.) Based upon this information, Defendant has not satisfied his burden of demonstrating that Briganti knowingly or recklessly misled the issuing judge regarding the information obtained from eJustice but rather that his ability to recall accurately past information is faulty.

    In response to Defendant's second assertion, that Briganti wholly adopted

---

[7] The government acknowledges that while Briganti testified that he ran Defendant's name through eJustice and this is not accurate, this was not an intentional lie but rather that Briganti failed to remember an immaterial fact. (Gov't's post-Hr'g mem. of law at 18, ECF No. 91.)

illegally obtained information from Thomas and failed to corroborate it when obtaining the warrant, the government argues that at the time Briganti obtained the VIN from Thomas, who lifted up a tarp on the white BMW parked in the driveway of 35 Geneva Street, such conduct was not considered illegal. Specifically, the government contends that "[t]he steps taken by law enforcement [*i.e.*, lifting the tarp and the dog sniff] were completely reasonable at the time [of the search] as *Collins v. Virginia*, the case that raised the issue of searching a vehicle parked on curtilage, had not yet been decided . . . [such that] it was wholly reasonable for law enforcement to think that the automobile exception to the warrant requirement would have applied. 138 S. Ct. 1663 (2018)."[8] (Gov'ts resp. to R&R at 14, ECF No. 50.) Moreover, *Davis* provides that the exclusionary rule does not apply where law enforcement acted

---

[8] In *Collins v. Virginia,* two police officers observed an individual driving an orange and black motorcycle with an extended frame violate traffic laws on two separate occasions, but the motorcycle eluded being stopped. 138 S. Ct. at 1668. Law enforcement learned the motorcycle appeared to be stolen and in possession of an individual with the last name Collins. *Id.* One of the officers who had witnessed a traffic infraction visited the individual's address and could see from his parked car on the street that the motorcycle involved in the infractions appeared to be parked at the top of the driveway, covered with a white tarp. *Id.* The officer walked onto the property to the motorcycle, pulled off the tarp, ran a search of the license plate and VIN and confirmed that it was stolen. *Id.* After Collins returned to the residence, the officer arrested him for being in possession of stolen property. *Id.* at 1668–69. Collins filed a motion to suppress the evidence obtained by the officer's warrantless search of the motorcycle because the officer violated the Fourth Amendment by trespassing onto the property to investigate the motorcycle. *Id.* at 1669. Both the Court of Appeals of Virginia and the Supreme Court of Virginia affirmed, though the Supreme Court's affirmance was based on different reasoning than that of the lower courts — namely that the officer could properly conduct a warrantless search under the automobile exception because the officer had probable cause to believe the motorcycle was stolen. *Id.* The United States Supreme Court determined that the area where the motorcycle was parked was curtilage, stating that "[i]n physically intruding on the curtilage of Collins' home to search the motorcycle, [the investigating officer] not only invaded Collins' Fourth Amendment interest in the item searched, *i.e.,* the motorcycle, but also invaded Collins' Fourth Amendment interest in the curtilage of his home." *Id.* at 1671. The Court also held that the automobile exception did not apply to justify the officer's presence in the curtilage, explaining that the automobile exception does not extend beyond the vehicle itself and that, therefore, "[t]o allow an officer to rely on the automobile exception to gain entry into a house or its curtilage for the purpose of conducting a vehicle search would unmoor the exception from its justification . . . ." *Id.* at 1671–73 (citation omitted).

in compliance with then-binding precedent. In *Davis*, the Supreme Court explained that "[b]ecause suppression would do nothing to deter police misconduct in these circumstances, and because it would come at a high cost to both the truth and the public safety, we hold that searches conducted in objectively reasonable reliance on binding appellate precedent are not subject to the exclusionary rule." 546 U.S. at 232. *See also United States v. Zodhiates*, 901 F.3d 137, 143 (2d Cir. 2018) (internal quotations and citations omitted) (Defendant sought to have his cell phone records suppressed because they were obtained without a warrant and, during his appeal to the Second Circuit, the Supreme Court found that a warrant was generally necessary to obtain such records. However, the Second Circuit concluded that defendant was "not entitled to have the records suppressed because, under the 'good faith' exception, when the Government act[s] with an objectively reasonable good-faith belief that their conduct is lawful, the exclusionary rule does not apply. This exception covers searches conducted in objectively reasonable reliance on appellate precedent existing at the time of the search.")

Further, Briganti's testimony supports the assertion that he obtained corroboration of the information as he stated that Swain drove by 35 Geneva Street and saw a vehicle that matched the description of what the CI told him earlier. (Tr. Nov. 22, 2019 Hr'g at 8:2–16.) Briganti also testified that he could not recall if he learned the VIN number first and confirmed it with Thomas or the other way around. (*Id.* at 48:13–22.) On this last point, the Court is mindful that at the time the warrant was issued, Thomas' search of the vehicle was not considered illegal. Based upon the

forgoing, it does not appear that Briganti intentionally or recklessly misled the issuing judge.

With respect to the fourth issue, Defendant contends that Briganti's grand jury testimony demonstrates inconsistencies in his testimony before this Court because he testified before the grand jury that the CI described the vehicle as a BMW with a cover and that it was parked third in the driveway. (Def.'s post-Hr'g mem. of law at 9, ECF No. 84.) Defendant asserts that Briganti did not tell the grand jury that the CI provided the lack of a license plate and color of the vehicle, but that during the November 22, 2019, hearing before this Court, Briganti testified that the CI told him the color of the vehicle and that it lacked registration. *(Id.)* The Court cannot decipher how Defendant's argument in this respect supports his assertion that Briganti intentionally or recklessly misled the issuing judge. Defendant's assertion demonstrates that Briganti may have misremembered what the CI told him between August 21, 2018, the date of his grand jury testimony, and November 22, 2019, the date of his testimony before this Court.

Finally, Defendant asserts that the content and level of specificity of the information Briganti attributed to the CI in the search warrant is misleading because Briganti testified that the CI indicated that the drugs were placed in a "white BMW - - it had a car cover on it - - that was up in the back and it didn't have any plates on it" and the vehicle "was parked the third car in the driveway, I believe he said." (Tr. Nov. 22, 2019, Hr'g at 6:14–25.) However, as the government asserts, the sentence at issue in the warrant—"The CI stated that during the early morning hours of

September 21, 2017, he/she observed an Hispanic female take the packages of Heroin and place them in the trunk of the 1992 BMW, white in color, bearing no New York registration, with Vehicle Identification Number of WBAHD6313NBJ68299"—is a summary of the information Briganti received from the CI and other sources, and is thus not entirely attributable to the CI. (Gov't's post-Hr'g mem. of law at 13–14, ECF No. 91.) The Court agrees with the government's characterization that the above-referenced sentence is "poorly worded," but that it does not amount to an attempt by Briganti to intentionally or recklessly mislead the issuing judge. The Court does not doubt that certain statements contained in Briganti's affidavit may have misstated the significance of his evidence, nor that such statements may have contributed to the issuance of an invalid search warrant. Indeed, even the government agreed that it seemed implausible that the CI provided Briganti with the VIN number and year of the vehicle. But as the government has asserted, Briganti's affidavit was made in the heat of the moment to ensure that law enforcement could act quickly before the narcotics were moved or hidden. The Court credits the assertion that Briganti's negligence was likely the result of rushing to complete the warrant package rather than an attempt to mislead Judge Dinolfo.

The government has offered satisfactory responses and explanations to Defendant's contention that the affiant intentionally misled Judge Dinolfo. S*ee United States v. Rickard*, 534 F. App'x 35, 38 (2d Cir. 2013) (agent's description of house as white rather than beige in the warrant application does not undermine conclusion that good faith applies, where discrepancy was explained as attributable

to the white appearance of beige by nighttime light), and Defendant has fallen short of showing that the affiant made intentionally or recklessly false statements to the issuing judge.

As the Supreme Court advises, exclusion should be a remedy of last resort and because  the undersigned finds that Briganti's oversights in drafting his affidavit were not deliberate or the result of gross negligence, the good faith exception applies. *United States v. Raymonda*, 780 F.3d 105, 120 (2d Cir. 2015) (finding that the good faith exception precluded suppression where the agent's "oversights in drafting the affidavit fall short of deliberate deception or gross negligence."). Accordingly, the first *Leon* factor is not applicable here and the undersigned recommends that the district court deny Defendant's motion to suppress.

## CONCLUSION

For the foregoing reasons, the undersigned recommends to the district judge that he deny Defendant's motion to suppress the fruits of the search conducted at 35 Geneva Street on September 21, 2017, as requested by Defendant on October 29, 2018, ECF No. 31.

Pursuant to 28 U.S.C. § 636(b)(1), the Court hereby

**ORDERS**, that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS**[9] to this Report and Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report and Recommendation in accordance with the above statute and Rule 59(b) of the Local Rules of Criminal Procedure for the Western District of New York.[10]

The district court will ordinarily refuse to consider on *de novo* review arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance. *See, e.g., Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988).

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Ltd.,* 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 59(b) of the Local Rules of Criminal Procedure for the Western District of New York, "[w]ritten objections . . . shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 59(b) may result in the District Court's refusal to consider the objection.**

---

[9] **NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION**: The parties shall have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. *See also* Fed. R. Civ. P. 6(a), (d) (adding three additional days when service is made under Fed. R. Civ. P. 5(b)(2)(C), (D) or (F)). A party may respond to another party's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections, and any response to objections, shall be filed with the Clerk of the Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Geraci.

[10] Counsel is advised that a new period of excludable time pursuant to 18 U.S.C. § 3161(h)(1)(D) commences with the filing of this Report and Recommendation. Such period of excludable delay lasts only until objections to this Report and Recommendation are filed or until the fourteen days allowed for filing objections has elapsed. *United States v. Andress*, 943 F.2d 622 (6th Cir. 1991); *United States v. Long*, 900 F.2d 1270 (8th Cir. 1990).

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to the attorneys for the parties.

**IT IS SO ORDERED.**

DATED:      December 11, 2020
               Rochester, New York

                                      MARK W. PEDERSEN
                                      United States Magistrate Judge