UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

Case # 18-CR-6126-FPG-MJP

v.

DECISION AND ORDER

BASILIO HERNANDEZ,
                       Defendant.

## INTRODUCTION

Defendant Basilio Hernandez is charged in a four-count indictment with (1) narcotics conspiracy in violation of 21 U.S.C. § 846; (2) possession of fentanyl and heroin with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 841(b)(1)(B) and 18 U.S.C. § 2; (3) possession of heroin with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B) and 18 U.S.C. § 2; and (4) possession of cocaine with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) and 18 U.S.C. § 2. ECF No. 22. By Order dated August 21, 2018, this case was referred to United States Magistrate Judge Jonathan W. Feldman pursuant to 28 U.S.C. §§ 636(b)(1)(A) and (b)(1)(B). On November 7, 2019, the Order referring the case to United States Magistrate Judge Jonathan W. Feldman was vacated and the case was referred to United States Magistrate Judge Mark J. Pedersen pursuant to 28 U.S.C. §§ 636(b)(1)(A) and (b)(1)(B).

On October 29, 2018, Defendant moved, *inter alia*, to suppress statements made and the evidence discovered as a result of a search conducted on September 21, 2017 at 35 Geneva Street in Rochester, New York. ECF No. 31 at 26-27.[1] Judge Feldman held an evidentiary hearing on January 23, 2019 regarding the motion to suppress. ECF No. 37. On June 3, 2019, Judge Feldman

---

[1] Each of Defendant's other motions were decided by Judge Feldman on January 2, 2019. ECF No. 36.

issued a report and recommendation ("R&R") recommending that Defendant's motion to suppress statements made be denied and his motion to suppress evidence discovered during the search be granted unless the government could provide further support for its alternative theory that the warrant was supported by probable cause. ECF No. 48. He provided the government an opportunity to submit a post-hearing brief and gave the Defendant time to respond. *Id.* at 16-17.

On August 12, 2019, Judge Feldman held an oral argument on the outstanding issue and concluded that a further hearing was necessary to hear testimony from Investigator Joseph Briganti regarding the information that was provided to him by the confidential information ("CI") and what was independently corroborated by officers prior to seeking the search warrant. *See* ECF No. 55.

Judge Pedersen held an evidentiary hearing on November 22, 2019, during which the parties and the court questioned Investigator Briganti as to the source of information contained in the affidavit for the warrant. *See* ECF No. 58; 62. The parties subsequently provided the court with the requested post-hearing briefing. *See* ECF Nos. 82, 91. On December 11, 2020, Judge Pedersen issued a report and recommendation ("R&R"), finding that the search warrant was not supported by probable cause but that the good faith exception was applicable and recommended that the Defendant's motion to suppress evidence be denied. ECF No. 96.

On February 17, 2021 Defendant objected to Judge Pedersen's R&R asserting that the good faith exception was inapplicable under the circumstances. ECF No. 102. On February 23, 2021, in response to the Court's request, the parties submitted a joint statement indicating that they did not seek review of Judge Feldman's R&R, ECF No. 48, but solely sought review of Judge Pedersen's R&R, ECF No. 96. ECF No. 104. The Government responded to Defendant's

objections on February 25, 2021. ECF No. 105. On February 26, 2021, Defendant indicated he would not be filing a reply and the R&R should be deemed submitted. ECF No. 106.

For the reasons that follow, the Court ADOPTS IN PART Judge Feldman's R&R, ECF No. 48, and ADOPTS IN FULL Judge Pedersen's R&R, ECF No. 96, and Defendant's motion to suppress is DENIED.

## BACKGROUND

On September 21, 2017, Investigator Joseph Briganti sought a search warrant from Monroe County Court Judge Vincent Dinolfo. Briganti Aff. at 6. The affidavit indicated that there was probable cause to believe that certain illegal property may be found in a vehicle. *Id.* at 3. The affidavit provided specifically that Briganti and Investigator Swain were informed by a confidential informant ("CI")—who had been an active informant since 2014—that during the late night and early morning hours of September 20, 2017 and September 21, 2017, he or she observed Hispanic males packaging large quantities of heroin at a location on Geneva Street. *Id.* at 4-5. Further, according to the affidavit, the CI advised that he or she observed a "Hispanic female take the packages of Heroin and place them in the trunk of the 1992 BMW, white in color, bearing no New York Registration, with Vehicle Identification Number of WBAHD6313NBJ68299." *Id.* at 5. According to the affidavit, the vehicle was parked in the driveway of 35 Geneva Street. *Id.* Finally, the affidavit indicated that on September 21, 2017 Investigator Swain responded to the location and observed a white BMW parked in the driveway, matching the description provided by the CI. *Id.* Officer Farnher then arrived at 35 Geneva Street with his K-9 partner, Pistol, and Pistol indicated an odor of a controlled substance on the right rear trunk. *Id.* Following the presentation of such information to Judge Dinolfo, the warrant was signed, and a subsequent search of the BMW took place.

Judge Feldman later concluded that the vehicle identification number ("VIN") was illegally obtained from the vehicle through a warrantless search that involved lifting the tarp off the vehicle and could not be included as a basis for the search warrant. *See* ECF No. 48 at 2-3, 13. Judge Feldman also concluded that the K-9 narcotic search of the area was an improper warrantless search and likewise, could not be included as a basis for the warrant. *Id.* at 13. No matter, the government maintained that the warrant was supported by probable cause because officers received information from a CI who observed the packing and placement of the narcotics in the vehicle and officers corroborated the information by observing a vehicle that matched the CI's description in the driveway which the CI identified. *See* ECF No. 50.

On August 12, 2019, Judge Feldman held a hearing to specifically determine what information was provided by the CI and what information was independently corroborated by law enforcement in seeking the search warrant. *See* ECF No. 55. At the hearing, the government indicated that the year model of the car and the VIN were either obtained by lifting the tarp covering the car or when the officers learned that Defendant lived at the location. *Id.* at 6-8. In response, Defendant's counsel pointed out that the affidavit does not indicate that the vehicle was tarped, nor does it indicate that the vehicle had no license plates, only no registration. *Id.* at 15. After hearing argument from both parties, Judge Feldman determined that Investigator Briganti's testimony was necessary to determine specifically what information the CI provided to him and what information was fruit of the illegal search or could be construed as the fruit of the illegal search. *Id.* at 24.

On November 22, 2019, Judge Pedersen held an evidentiary hearing to further clarify the source of information used in support of the search warrant. *See* ECF No. 62. According to Briganti, on September 21, 2017, at approximately 9 a.m., he received a phone call from a CI he

had been working with for approximately two to two and a half years. *Id.* at 5. The CI advised him that on the previous night and into the morning of the following day, the CI and others were packaging cocaine and heroin at a location on Geneva Street. *Id.* at 6. Once the packaging was complete, the CI informed Briganti that a female put the packaged cocaine and heroin into a bag, brought it to a location three houses down from 41 Geneva Street, and placed it into the trunk of a white BMW, the third car in the driveway, which was covered by a tarp and had no license plates. *Id.*

After receiving the information, Briganti testified that he immediately contacted Investigator Swain and asked him to go to the area of 41 Geneva Street to look for the vehicle the CI described. *Id.* at 7. Shortly after, Briganti testified that Investigator Swain went to 41 Geneva Street and drove by 35 Geneva Street, where a car with a cover on it in the back of the driveway was observed. *Id.* at 8. Briganti further testified that Investigator Swain then contacted Officer Farnher, a K-9 handler, and Officer Thomas to assist him. *Id.* at 8-9. Briganti testified that he received information that the K-9 signaled a positive indication for narcotics at the rear of the vehicle. *Id.* at 9-10. Moreover, Briganti testified that Officer Thomas provided the full name of the resident living at 35 Geneva Street—Basilio Hernandez—and provided information regarding the vehicle in question, namely, the VIN. *Id.* at 10-11. Briganti also testified that when the CI contacted him, the CI provided Defendant's first name, and that Briganti checked with Rochester city records to obtain Defendant's first and last name, and that he "went to eJustice and determined that there was a titled vehicle to Mr. Hernandez that was titled but unregistered as a 1992 BMW." *Id.* at 12. Once Briganti had all the above referenced information, he sought a search warrant of the vehicle. *Id.*

5

At the hearing, Investigator Briganti read through the affidavit he submitted in seeking the search warrant with the government. In doing so, he clarified that the year and vehicle identification number of the car was information *not* provided by the CI as the affidavit suggests, rather, the information was researched and confirmed with Officer Thomas in seeking the warrant. *Id.* at 16. Further, Briganti testified that the information regarding the lack of registration was from his own independent research but that the CI advised the car had no rear license plate. *Id.* at 16-17. He further indicated that while the CI informed him that the drugs were placed three houses down from 41 Geneva Street, the next house over is a duplex—37 Geneva Street and 35 Geneva Street—thus, it was unclear whether the "three houses" referred to each duplex as its own separate house, or as one house. *Id.* at 22-23, 29. No matter, according to Briganti, later observations of Investigator Swain and Officer Thomas confirmed the location of the vehicle in question as 35 Geneva Street. *Id.* at 17.

During cross-examination, Briganti again testified that the CI did not provide any information regarding the lack of car registration or the VIN. *Id.* at 34. He conceded that he did not know whether Officer Swain stopped at the residence in question or went up the driveway, he did not know whether the tarp on the car was lifted prior to their conversation, nor did he know whether Officer Thomas entered the driveway, lifted the tarp, or where Officer Thomas' basis of knowledge came from. *Id.* at 34-36. Briganti also testified that he received information regarding the year and VIN of the BMW when he researched Defendant's name and vehicles that were owned or registered to him. *Id.* at 42.

## LEGAL STANDARD

"The standard of review employed by this Court when considering appeals from the decision of a magistrate judge depends upon whether the challenged order is dispositive or

nondispositive." *New York v. Salazar*, No. 08-CV-644, 2011 WL 1938232, at *4 (N.D.N.Y. Mar. 8, 2011). On a dispositive matter—*e.g.*, motions to suppress—the magistrate judge may only issue a Report and Recommendation ("R&R"). 28 U.S.C. § 636(b)(1)(B). A district court reviews those portions of an R&R to which a party has timely objected *de novo*. Fed. R. Crim. P. 59(b)(3); *see also United States v. Sasiadek*, 310 F. Supp. 3d 371, 375 (W.D.N.Y. 2018). When a party does not object to a portion of an R&R, or when the objections are conclusory, general, or without legal support, a district court reviews those portions for clear error. *See United States v. Preston*, 635 F. Supp. 2d 267, 269 (W.D.N.Y. 2009). After reviewing the R&R and the objections thereto, a district court "may accept, reject, or modify the recommendation, receive further evidence, or resubmit the matter to the magistrate judge with instructions." Fed. R. Crim. P. 59(b)(3).

Here, the only objections filed pertain to Judge Pedersen's R&R. Specifically, Defendant objects to the recommendation that his motion to suppress be denied due to the applicability of the good faith exception.

## ANALYSIS

### I. JUDGE FELDMAN'S JUNE 3, 2019 R&R

Since no objections have been filed, and the parties have further indicated that they do not seek review of Judge Feldman's R&R, the Court may accept and adopt the R&R in its entirety as long as no clear error is apparent from the face of the record. *Preston*, 635 F. Supp. 2d at 269.

The Court has reviewed Judge Feldman's R&R and does not find any portion of it to be "facially erroneous." Thus, the Court finds no clear error in Judge Feldman's R&R that Defendant's motion to suppress statements be denied and adopts it accordingly. The Court also finds no clear error in Judge Feldman's recommendation that the lifting of the tarp off the BMW to obtain the car's VIN be deemed an illegal search and should be removed from the warrant, as

well as no clear error in the recommendation that the location on the driveway where the covered BMW was parked be found as part of the curtilage of 35 Geneva Street and therefore deem the use of the narcotic dog an unlawful search.  Thus, the Court adopts those recommendations in full.

Lastly, Judge Feldman's R&R recommends that Defendant's motion to suppress evidence be granted unless additional support for the government's "alternative argument" is subsequently presented.  As discussed, the government did in fact submit an alternative argument to the Court.  Therefore, for the reasons set forth below, the Court does not adopt Judge Feldman's R&R as it pertains to granting the Defendant's motion to suppress evidence, but rather, for the reasons set forth below, adopts Judge Pedersen's R&R on the matter.

## II.     JUDGE PEDERSEN'S DECEMBER 11, 2020 R&R

Defendant agrees with Judge Pedersen's conclusion that the search warrant was not supported by probable cause, but objects to his conclusion that the good faith exception applies to the search of the BMW.  He therefore objects to Judge Pedersen's recommendation that the Court deny Defendant's motion to suppress evidence. *See* ECF No. 102.  In response, the government maintains that the search warrant was supported by probable cause but agrees that even if probable cause did not exist, the evidence should not be suppressed as the good faith exception is properly applicable.  *See* ECF No. 105.

### A.  Probable Cause

The Fourth Amendment of the United States Constitution states: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV.

The probable cause requirement is "not a high bar" and is met where "the totality of circumstances indicates a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Pinto-Thomaz*, 352 F. Supp. 3d 287, 304 (S.D.N.Y. 2018) (citations omitted). When reviewing the validity of a search warrant, the Court's duty on review is to "ensure that the [court] had a substantial basis for . . . concluding that probable cause existed." *Illinois v. Gates*, 462 U.S. 213, 238-39 (1983). In doing so, the Court must afford great deference to warrants issued by neutral and detached magistrates. *See United States v. Falso*, 544 F.3d 110, 117 (2d Cir. 2008).

While the government's response indicates its belief that, contrary to Judge Pedersen's R&R, the warrant was supported by probable cause, the government filed no objection on that ground. Therefore, the Court may undertake a "clear error" review of the portion of Judge Pedersen's R&R regarding probable cause. Under this standard, the Court may adopt the portions of the R&R not objected to so long as the portion is not "facially erroneous." *United States v. Berry*, No. 15-CR-00098, 2017 WL 5624242, at *2 (W.D.N.Y. Nov. 22, 2017).

The Court has reviewed Judge Pedersen's R&R regarding the lack of probable cause and does not find it to be "facially erroneous." Thus, the Court finds no clear error regarding Judge Pedersen's recommendation that the search warrant lacked probable cause and adopts the recommendation accordingly.

**B. Good Faith Exception**

Even where, as here, a search warrant lacks probable cause, the fruits of the search are not necessarily suppressed under the exclusionary rule. *See Gates*, 462 U.S. at 223. Rather, the application of the exclusionary rule turns on the deterrence effect for future Fourth Amendment violations. *See United States v. Calandra*, 414 U.S. 338, 347-55 (1974). "Indeed, exclusion has

always been our last resort, not our first impulse." *Herring v. U.S.*, 555 U.S. 135, 140 (2009) (internal quotations and citations omitted).

It is well established that where an officer believes she has a valid warrant from a magistrate judge and acts within its scope, the officer has acted with objective good faith and there is effectively "nothing to deter." *United States v. Leon*, 468 U.S. 897, 921 (1984). However, reliance on an issued warrant as a good faith basis for a search will not protect an officer in circumstances where: (1) the issuing judge has been knowingly misled; (2) the issuing judge wholly abandoned his or her judicial role; (3) the application is so lacking in indicia of probable cause as to render reliance on it unreasonable; or (4) the warrant is so facially deficient that reliance upon it is unreasonable. *See id.* at 922-23.

Indeed, "in certain circumstances, *Franks* [*v. Delaware*, 428 U.S. 154 (1978)] permits a defendant to challenge the truthfulness of factual statements made in the affidavit, and thereby undermine the validity of the warrant and the resulting search and seizure." *United States v. Mandell*, 752 F.3d 544, 551-52 (2d Cir. 2014) (internal quotations omitted). "'[T]o suppress evidence obtained pursuant to an affidavit containing erroneous information, the defendant must show that: (1) the claimed inaccuracies or omissions are the result of the affiant's deliberate falsehood or reckless disregard for the truth; and (2) the alleged falsehoods or omissions were necessary to the [issuing] judge's probable cause [or necessity] finding.'" *United States v. Rajaratnam*, 719 F.3d 139, 146 (2d Cir. 2013) (quoting *United States v. Canfield*, 212 F.3d 713, 717-18 (2d Cir. 2000)) (alterations in original).

Here, Defendant claims that the government engaged in "deliberate falsehood and reckless disregard for the truth before the issuing magistrate." ECF No. 102-1 at 4. In other words, Defendant believes that the government knowingly misled the magistrate judge in applying for a

10

warrant. *Id.* Specifically, Defendant contends, *inter alia*, that the cumulative effect of Briganti's conflicting testimony evidences more than mere negligence in drafting the affidavit; that the testimony regarding eJustice records was clearly false; that Briganti used illegal information in seeking the warrant without independent corroboration; and that the photos taken of the location show that Investigator Swain would be unable to corroborate information by visual observation. *See* ECF No. 102-1 at 5-12.

First, the Court recognizes that there were numerous inconsistencies in Investigator Briganti's testimony. In fact, the inconsistencies Defendant cites as examples of misleading statements are the same inconsistencies that formed the basis for Judge Pedersen's determination that the warrant lacked probable cause. *See* ECF No. 96. However, while Defendant lists these inconsistencies and argues that they cumulatively evidence deliberate falsehood or reckless disregard for the truth in seeking the search warrant, the Court cannot simply infer a reckless disregard unless the circumstances demonstrate an "'*obvious* reason to doubt the veracity' of the allegedly misstated information." *United States v. Nejad*, 436 F. Supp. 3d 707, 720 (S.D.N.Y. 2020) (quoting *Rajaratnam*, 719 F.3d at 154) (additional citations omitted). Indeed, courts have found that where an affidavit exaggerates or misstates information or evidence, without evidence of deliberate deception, the good faith exception remains applicable. *United States v. Raymonda*, 780 F.3d 105, 120 (2d Cir. 2015).

Here, Defendant does not provide the Court with any basis from which it may discern that there was some deliberate deception in each of the inconsistencies in testimony, but rather, claims that the cumulative effect of the inconsistencies indicates deception. *See* ECF No. 102-1 at 7. Defendant offers no support for this position and in fact, relevant case law seems to demonstrate otherwise. *See, e.g.*, *Raymonda*, 780 F.3d at 118-20 (applying the good faith exception to a search

without probable cause even where an agent allegedly relied on potentially stale evidence, submitted a significantly exaggerated affidavit, provided the court allegedly baseless affidavit claims, and omitted various critical facts); *Falso*, 544 F.3d at 125-28 (finding the good faith exception applicable to a warrant that lacked probable cause despite various alleged misstatements in the affidavit because defendant did not establish that the agent provided such misstatements to the court knowingly or recklessly); *United States v. Harris*, 144 F. Supp. 3d 406, 410-12 (W.D.N.Y. 2015) (denying defendant's motion to suppress despite the presence of various inconsistencies between the affidavit and hearing testimony, on the basis that there were no grounds for the court to conclude that the agent intentionally or recklessly made such misrepresentations in seeking the search warrant).

The same can be said for Defendant's contentions that Investigator Briganti knowingly presented false testimony to the Court regarding the information obtained through eJustice used to corroborate the CI's information and that it was error to accept that other officers working with Briganti may have run the searches. It is true that Briganti's testimony and available records are inconsistent—specifically, Briganti testified that he determined through eJustice that Defendant had a titled but unregistered 1992 BMW, while records from eJustice did not show that Briganti ran any inquiries through the system concerning Defendant. But again, the Court cannot make the inference that this was a reckless disregard for the truth or a knowing attempt to mislead the magistrate judge. In fact, Briganti acknowledged at the hearing that he was "not certain" if he obtained vehicle information from Officer Thomas and later confirmed it, or if he had the information and asked Officer Thomas to confirm the information for him. ECF No. 62 at 48. Thus, while Defendant contends Briganti was deliberately deceptive in providing such statements to the court, it is equally plausible that Briganti simply could not recall specifically who obtained

the corroborating information from eJustice given the number of parties involved and the speed at which the information was collected. This Court therefore cannot conclude, without some "credible and probative evidence" of the agent's state of mind, that Briganti's statements were specifically designed to mislead the court in obtaining the warrant. *See United States v. Lahey*, 967 F. Supp. 2d 698, 710 (S.D.N.Y. 2013). Such evidence is simply not present in Briganti's testimony.

Defendant also maintains that it was impossible for Investigator Swain to visually observe the target vehicle based on the photographs submitted at the hearing and therefore, the assertion that Swain corroborated the information about the make and color of the vehicle was improperly relied upon. ECF No. 102-1 at 11. Again, this does not rise to the level of conduct necessary to find that a magistrate judge was knowingly misled. Indeed, Investigator Briganti acknowledged that from the "vantage point" of the photo presented at the hearing, he was not able to view the third car in the driveway. ECF No. 62 at 31. However, this is not probative of what Investigator Swain was able to see when he went to the location as his vantage point is unknown. Moreover, Briganti testified that he was not at the house when Investigator Swain went to the location to observe—he did not know whether Investigator Swain stopped at the residence, went up to the driveway, or simply drove by. *Id.* at 35-6. This Court therefore cannot conclude that such an assertion was an attempt by the government to deliberately deceive the magistrate judge. *See, e.g.*, *United States v. Bailey*, No. 15-CR-6082G, 2016 WL 6995067, at *24 (W.D.N.Y. Nov. 29, 2016) (affidavit not deemed materially misleading where affiant made clear he was interpreting conversations, information and observations in the investigation in creating the affidavit).

Moreover, Defendant asserts that the government "should not be permitted to use evidence determined illegal . . . in support of a good faith exception argument." ECF No. 102-1 at 11.

Specifically, Defendant references the information obtained by lifting the tarp and having a K-9 sniff the area. *Id.* However, this conduct was reasonable at the time it was performed and was only later rendered illegal by Judge Feldman due to the Supreme Court's intervening decision of *Collins v. Virginia*, __ U.S. __ (2018), in which the Court determined that a partially enclosed portion of a driveway of a home was curtilage for purposes of the Fourth Amendment. Contrary to Defendant's assertion, the good faith exception covers searches conducted in reasonable reliance on precedent existing at the time of the search. *See United States v. Aguiar*, 737 F.3d 251, 259 (2d Cir. 2013); *see also United States v. Zodhiates*, 901 F.3d 137, 143 (2d Cir. 2018) (recognizing that although intervening decisions rendered a search illegal, the evidence was not going to be suppressed under the good faith exception) (citing *Davis v. United States*, 564 U.S. 229, 238 (2011) (evidence will not be suppressed where the government "act[s] with an objectively reasonable good-faith belief that their conduct is lawful")). Therefore, the Court will not deem this conduct to support the suppression of evidence as Defendant suggests.

Finally, it is well established that allegations of negligence or innocent mistakes are insufficient to rise to the level of conduct necessary to successfully challenge the veracity of an affidavit seeking a search warrant. *See Falso*, 544 F.3d at 125-6. Here, Defendant's various contentions of inconsistencies and misstatements in the affidavit cannot be deemed to be more than that. Moreover, such inconsistencies cannot undermine the officers' good faith reliance on what was understood to be a sufficient, signed warrant. Indeed, the Court has stated that,

> In the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient. Once the warrant issues, there is literally nothing more the policeman can do in seeking to comply with the law. Penalizing the officer for the magistrate's error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations.

*Leon*, 468 U.S. at 921 (internal quotations and citations omitted).  Thus, the officer's conduct here in utilizing the information provided by the CI and performing later steps to corroborate and supplement such information—regardless of the apparent oversights and negligence in the ultimate drafting of the affidavit and crediting information to the proper parties—falls under the good faith exception.  There is simply no evidence to show that the conduct here rose to a level to constitute deliberate or grossly negligent behavior in support of Defendant's motion to suppress.  Rather, the conduct here is precisely that which the good faith exception is meant to protect.  *See, e.g.*, *United States v. Williams*, 350 F. Supp. 3d 261, 276 (W.D.N.Y. 2018) (good faith exception applicable to warrant lacking probable cause, despite inconsistencies in the information submitted in the affidavit, where officers relied on the warrant in good faith when executing the search); *Nejad*, 436 F. Supp. 3d at 732-33 (good faith exception applicable to a warrant where despite claims of numerous falsities contained in the affidavit submitted in support of a warrant, the police were not unreasonable in acting within the scope of the warrant).

Accordingly, the Court adopts Judge Pedersen's recommendation and denies the Defendant's motion to suppress.

## CONCLUSION

For the foregoing reasons, the Court adopts in part Judge Feldman's R&R, ECF No. 48, adopts Judge Pedersen's R&R, ECF No. 96, and Defendant's motion to suppress, ECF No. 31, is DENIED.

IT IS SO ORDERED.

DATED:   March 22, 2021
         Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court